UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| FRANK MILLER,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER BUSH-KRAFT, individually, and the ESTATE OF DAVID ANTHONY KRAFT, by and through its administrator JENNIFER BUSH-KRAFT,<br><br>Defendants. | **CAFN:**  2:22-CV-157-RWS |

## COMPLAINT

Plaintiff Frank Miller ("Miller"), by and through his undersigned counsel, alleges for his Complaint against Defendants Jennifer Bush-Kraft ("Bush-Kraft") and the Estate of David Anthony Kraft, by and through Bush-Kraft as administrator (the "Estate"), as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Miller is a citizen of the State of New York.

2. Defendant Bush-Kraft is a citizen of the State of Georgia.

3. The Estate is located and is being administered in the Probate Court of Rabun County, State of Georgia, Estate No. 4925.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, in that the value of the works of art that are the subject of this action exceeds $75,000.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) as this is the District in which the cause of action arose, in which Defendant Bush-Kraft resides, and in which Defendant the Estate is located.

## NATURE OF THE ACTION

6. Miller is an acclaimed American comic book writer and artist, screenwriter, film director and producer, whose comic and graphic novel works include The Dark Knight Returns, Ronin, Sin City, Batman: Year One, 300, and Daredevil: Man Without Fear. His work has earned numerous industry awards, including multiple Eisner Awards, Kirby Awards, and Harvey Awards. The film adaptation of Sin City, which Miller co-directed, was nominated for the Palme d'Or, the highest prize awarded each year at the Cannes Film Festival.

7. David Anthony Kraft ("Kraft") was for many years an editor at D.C. Comics and the publisher of *Comics Interview Magazine* ("*Comics Interview*"), which was Kraft's magazine featuring interviews with comic book professionals and fans, many of whom are legends in the industry.

8. Miller was one of the comic artists that was from time to time featured in *Comics Interview*. In 1983, Miller was featured in an issue of *Comics Interview* concerning his *Ronin* comic, in which Ronin, a disgraced Samurai warrior from 13th century feudal Japan, is mystically reborn in a corrupt 21st century New York and given a chance to redeem himself (the "*CI Ronin* Issue").

9. In 1986, Miller was featured in an issue of *Comics Interview* concerning *The Dark Knight Returns*, which was a four-issue comic miniseries portraying Batman, drawn in a distinct and "gritty" style, as returning from retirement to fight crime but now opposed by law enforcement and governmental authorities and introducing a female character, Carrie Kelley, the new Robin (the "*CI DKR* Issue").

10. Prior to the publication of each of the above issues of *Comics Interview*, Kraft asked Miller to create drawings that Kraft could use as cover art (comprising the "*Ronin* Work" and the "*DKR* Work," collectively "the Works" as further defined below).

11. In each instance, Miller and Kraft agreed - consistent with the custom and usage in the trade at the time - that (a) Kraft could retain the Works for a period of time, (b) each of the Works could not be used for any purpose other than as cover art for the respective issues of *Comics Interview* referred to above and (c) both of the Works would remain Miller's property and would be returned to him after the use as cover art was completed and, in all events, upon demand.

12. Based on the foregoing agreement and understanding, Miller created an approximately 10 inch by 10 inch work featuring Ronin (the "*Ronin* Work") and delivered same to Kraft in 1983 for use as cover art for the *CI Ronin* Issue.

13. Based on the foregoing agreement and understanding, Miller also created a 10 inch by 12 inch work featuring Batman drawn in the distinctive "*Dark Night Returns*" style and Carrie Kelley (the "*DKR* Work") and delivered same to Kraft in 1986 for use as cover art for the *CI DKR* Issue (the *DKR* Work, together with the *Ronin* Work, the "Works").

14. The *DKR* Work is of particular value because it is one of the earliest (although not the first) work of cover art depicting (a) Batman in the distinctive "*Dark Knight Returns*" style and (b) Carrie Kelley.

15. At no time did Miller consent to the transfer of possession of the Works from Kraft to any other person or entity

16. Beginning in the 1980's and at times thereafter, Miller, directly or indirectly, and Miller's publisher asked Kraft to return the Works and other pieces of art that Miller had loaned to him for use as covers for issues of *Comics Interview*.

17. Kraft returned one such artwork -- a piece created by Miller and delivered to Kraft for use as cover art for an issue of *Comics Interview* featuring an interview with Miller about his Sin City comic series, which is not at issue here. Kraft did not, however, return either of the Works, leading Miller and his publisher

(which reported the results of its requests to Miller) to believe that they had been lost.

18. In May of 2021, Kraft passed away.

19. After Kraft passed away, Bush-Kraft, by and through the Estate (of which she is the administrator and heir),[1] came into possession of the Works.

20. In or about May 2022, Miller learned that Bush-Kraft and/or the Estate was in possession of the Works and had placed them for sale at auction.

21. The Works are currently being held by the auction house through which Bush-Kraft and/or the Estate attempted to sell them.[2]

22. Upon learning that the Works were in the possession of Bush-Kraft and/or the Estate, Miller demanded return of the Works.

23. However, Bush-Kraft, individually and/or as administrator of the Estate, refused to return them.

---

[1] Kraft having died intestate, Bush-Kraft was appointed administrator of the Estate and issued letters of administration in November 2021.

[2] The auction house has indicated that it is willing to return the Works to Miller upon either a court decision that they are the property of Miller or an instruction from Bush-Kraft.

## FIRST CAUSE OF ACTION
**(Breach of Bailment – against the Estate)**

24. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 23 hereof with the same force and effect as if fully set forth herein.

25. A bailment agreement existed between Miller and Kraft wherein Miller was the bailor and Kraft was the bailee.

26. After Kraft passed away, the Estate was in possession of the Works.

27. Kraft's death terminated the bailment agreement.

28. Following Kraft's death, the Estate was obligated to return the Works to Miller.

29. Following Kraft's death, Miller demanded return of the Works from the Estate.

30. The Estate refused to return the Works.

31. The Estate's refusal to return the Works and its delivery of the Works to the auction house for sale, without Miller's consent or permission, each separately and collectively constitute a breach of the bailment agreement.

32. As a result of the Estate's breach of the bailment agreement, Miller has been damaged by the deprivation of his right to possession of the Works.

33. Miller is entitled to the return of the Works, and, in the alternative, damages in an amount to be determined at trial.

34. The Estate has acted in bad faith, been stubbornly litigious, and has caused Miller unnecessary time, trouble, and expense. Thus, pursuant to O.C.G.A. §13-6-11, Miller is entitled to recover his expenses of litigation, including his attorneys' fees.

## SECOND CAUSE OF ACTION
**(Breach of Bailment – against the Estate and Bush-Kraft)**
(*In the Alternative to First Cause of Action*)

35. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 34 hereof with the same force and effect as if fully set forth herein.

36. If the bailment agreement was not terminated upon Kraft's death, then the Estate, and Bush-Kraft as Kraft's successor and/or heir, assumed Kraft's obligations under it.

37. Subsequent to Kraft's death, Miller demanded that Bush-Kraft return the Works.

38. Bush-Kraft refused to return the Works.

39. Bush-Kraft's refusal to return the Works and her delivery of the Works to the auction house for sale, without Miller's consent or permission, each separately and collectively constitute a breach of the bailment agreement.

40. As a result of the Estate's and/or Bush-Kraft's breach of the bailment agreement, Miller has been damaged by the deprivation of his right to possession of the Works.

41. Miller is entitled to the return of the Works, and in the alternative, damages in an amount to be determined at trial.

42. Bush-Kraft has acted in bad faith, been stubbornly litigious, and has caused Miller unnecessary time, trouble, and expense. Thus, pursuant to O.C.G.A. §13-6-11, Miller is entitled to recover his expenses of litigation, including his attorneys' fees.

## THIRD CAUSE OF ACTION
### (Conversion – against the Estate)

43. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 hereof with the same force and effect as if fully set forth herein.

44. Miller is the owner of the Works.

45. Following Kraft's death, the Estate maintained possession of the Works.

46. Subsequent to Kraft's death, Miller demanded that the Estate return the Works.

47. The Estate refused to return the Works.

48. The Estate's refusal to return the Works and its delivery of the Works to the auction house for sale, without Miller's consent or permission, each separately and collectively, constitute a conversion.

49. Miller has been damaged by the deprivation of his right to possession of property.

50. Miller seeks the return of the Works or, in the alternative, Miller damages in an amount to be determined at trial.

51. The Estate has acted in bad faith, been stubbornly litigious, and has caused Miller unnecessary time, trouble, and expense.  Thus, pursuant to O.C.G.A. §13-6-11, Miller is entitled to recover his expenses of litigation, including his attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(Conversion – against Bush-Kraft)**

52. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 51 hereof with the same force and effect as if fully set forth herein.

53. Miller is the owner of the Works.

54. Following Kraft's death, Bush-Kraft assumed possession of the Works.

55. Subsequent to Kraft's death, Miller demanded that Bush-Kraft return the Works.

56. Bush-Kraft refused to return the Works.

57. Bush-Kraft's refusal to return the Works and her delivery of the Works to the auction house for sale, without Miller's consent or permission, each separately and collectively, constitute a conversion.

58. Miller has been damaged by the deprivation of his right to possession of property.

59. Miller seeks the return of the Works or, in the alternative, damages in an amount to be determined at trial.

60. Bush-Kraft has acted in bad faith, been stubbornly litigious, and has caused Miller unnecessary time, trouble, and expense.  Thus, pursuant to O.C.G.A. §13-6-11, Miller is entitled to recover his expenses of litigation, including his attorneys' fees.

**WHEREFORE**, Plaintiff demands judgement against Defendants as follows:

(a) granting possession, custody, and control of the Works to Plaintiff and requiring Defendants to effectuate their delivery to him;

(b) in the alternative, awarding Plaintiff compensatory damages for the value of the Works based on Defendants' wrongful possession of the Works, in an amount, exceeding $75,000, to be determined at trial;

(c) on all claims for relief, awarding Plaintiff pre-and post- judgment interest, and the costs and expenses of this action, including reasonable attorney's fees; and

(d) awarding Plaintiff such other and further relief as may be just and proper.

Dated: Atlanta, GA
August 8, 2022

Respectfully Submitted,

DENTONS US LLP

By: Sarah Hannah Phillips_____
   Sarah Hannah Phillips
   Georgia Bar No. 302869

303 Peachtree Street, N.E. Suite 5300
Atlanta, Georgia 30308-3265
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
Email: sarahhannah.phillips@dentons.com

Anthony B. Ullman
New York Bar No. 1981349
(*pro hac vice application forthcoming*)
1221 Ave of the Americas
New York, NY 10020
Telephone: (212) 632-8342
Facsimile: (212) 768-6800
Email: anthony.ullman@dentons.com

11

Samuel Fifer
Illinois Bar No. 803006
(*pro hac vice application forthcoming*)
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6361
Telephone: (312) 876-3114
Email: samuel.fifer@dentons.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| FRANK MILLER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JENNIFER BUSH-KRAFT, individually, and the ESTATE OF DAVID ANTHONY KRAFT, by and through its administrator JENNIFER BUSH-KRAFT,<br><br>　　　　　Defendants. | CIVIL ACTION  FILE NO. |

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing was prepared in accordance with N.D. Ga. L.R. 5.1, using Times New Roman font, 14 point.

　　　　　　　　　　　　　　　　　　　　*/s/ Sarah Hannah Phillips*
　　　　　　　　　　　　　　　　　　　　Sarah Hannah Phillips